**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No.  JRR-24-295** |
| | : | |
| **RONALD JONES** | : | |
| | : | |
| **Defendant.** | : | |

---

<u>**OMNIBUS MOTION TO SUPPRESS**</u>

Defendant Ronald Jones ("Mr. Jones"), by and through his counsel, Michael E. Lawlor, Adam C. Demetriou, and Brennan, McKenna & Lawlor, Chtd., respectfully submits the following Omnibus Motion to Suppress. Mr. Jones moves to suppress the fruits of, as well as all evidence derived from, his July 29, 2024 arrest by members of the Baltimore Police Department pursuant to a July 23, 2024 Baltimore County arrest warrant. Mr. Jones also moves to suppress the fruits of the September 11, 2024 federal warrants to search his Instagram account, cell phone, and iCloud account.[1]

### I.    Factual and Procedural Background

### A.    June 29, 2024 – Mr. Jones is the Victim of a Shooting

On the morning of June 29, 2024, Ronald Jones, a survivor of a vicious shooting attack that claimed one of his eyes when he was just sixteen years old, was shot in the back. He responded to Northwest Hospital in Randallstown, Maryland for treatment. By 10:51 a.m., Baltimore County Police Department (BCPD) officers were on scene at the hospital and had begun their

---

[1] On December 1, 2025, the Government informed counsel that it does not, at this time, intend to introduce any of Mr. Jones' statements to law enforcement. Accordingly, Mr. Jones has not moved to suppress those statements.

investigation. Mr. Jones' family members came to the hospital to check on his condition. Officers constantly surrounded Mr. Jones as he received treatment from hospital staff. Mr. Jones' wounds are seen in the screenshot below.



Several hours after arriving to the hospital, while in a hospital bed still suffering from the gunshot wound, Mr. Jones was questioned by BCPD Det. Forish and other officers.



At 1:15 p.m., as the shooting investigation was well underway, Mr. Jones allegedly told Det. Fornish that his name was Tryquan Joshua Thomas Jones. In fact, that is the name of Mr. Jones' brother. By 2:35 p.m., while Mr. Jones continued to receive medical treatment and hospital

staff prepared to stich Mr. Jones' wound, BCPD officers decided that they would take Mr. Jones

into custody for providing the allegedly false identity and transport him to headquarters for

questioning because, in the words of an officer, that location would be "more intimidating."

By 3:00 p.m., Mr. Jones was dressed in hospital scrubs and ready to be discharged. Officers

entered the hospital room and informed Mr. Jones that they would be taking him to headquarters.



Mr. Jones indicated that he did not wish to discuss the circumstances of the shooting any

further. The officers insisted that they would be transporting him to headquarters. Mr. Jones asked

whether he was under arrest. The officer in the white shirt stated: "you're being detained right

now, yes." Mr. Jones asked about the basis of the arrest. The officer stated that he did not believe

that Mr. Jones provided his true name. The officer then asked: "What's your actual name?" Mr.

Jones explained he was on probation and would be honest. He explained that his name is Ronald

Jones. He provided his date of birth. He explained that Tryquan Jones is his brother. The officer

stated that Mr. Jones was not under arrest at that moment but that the officers could arrest him for

providing his brother's name. The officer continued: "So, I'm asking you to cooperate with us and

come with us to headquarters. You work with us, and we'll work with you." Mr. Jones stated that

he believed the officers' position amounted to "either come talk to me, or I'm gonna lock you up for giving you a false name." An officer agreed with Mr. Jones, stating: "That's pretty much it. I'm not lying to you dude." Seconds later, the officer in the white shirt stated: "Look, I don't care if you come up and tell us the same thing. If you're truthful with us, like you were here, we just want to get the story again. We'll release you from headquarters. Listen, even though you gave us a bad name, if I was going to lock you up, I'd have locked you up already."

The officers then led Mr. Jones – who was still wearing hospital scrubs – to a BCPD vehicle and transported him to BCPD headquarters. As they placed Mr. Jones into the car, the officers told Mr. Jones, who indicated that he was supposed to be attending a baby shower, that they would give him a ride after he spoke with Det. Forish at headquarters.



At BCPD headquarters, the officers placed Mr. Jones in an interview room and shackled his feet to the wall.



Det. Forish then interviewed Mr. Jones, who described the circumstances under which he was shot. While in the interview room, Mr. Jones expressed to an officer that he was on probation and was worried that he would be subject to a violation as a result of the contact with police. An officer stated: "Yeah, but you're a victim, so you're fine. You're not a suspect." At the conclusion of the interview, one of the officers who told Mr. Jones at the hospital that he would not be charged if he went to headquarters and answered questions stated that the police had kept their word and that Mr. Jones would be sent on his way, without charges. At approximately 5:52 p.m., officers transported Mr. Jones, still wearing scrubs and hospital socks, from BCPD headquarters.



**B.      Broken Promises – Baltimore County Charges**

On July 1, 2024, Det. Forish applied for and received Baltimore County Circuit Court orders authorizing the disclosure of real-time and GPS and historical cell site location information for two phone numbers: one belonging to Mr. Jones and the other belonging to his brother. At some point, Det. Forish began communicating regarding Mr. Jones with Det. Thomas Smith of the Baltimore Police Department (BPD). According to text messages provided by the Government, by at least July 23, 2024 at 10:54 a.m., the officers decided, before any charges were filed in any jurisdiction, that they wanted Mr. Jones to be subject to federal revocation of supervised release proceedings. In direct contradiction of the promises made by BCPD officers on June 29 to Mr. Jones as he was suffering from a gunshot wound, on July 23, 2024 at 11:29 a.m., Det. Forish swore out a Statement of Charges charging Mr. Jones in the District Court of Maryland for Baltimore County with the following misdemeanor offenses: making a false statement to an officer, in violation of Md. Code Ann., Crim. Law § 9-501; and assuming the identity of another to avoid identification, apprehension, or prosecution for a crime, in violation of Md. Code Ann. Crim. Law § 8-301(c)(1). *See State v. Jones*, No. D-08-CR-24-001714; *see also* Ex. A. As to the false identity charge, Det. Forish alleged that Mr. Jones assumed the identity of his brother to avoid prosecution for the purported criminal offense of "violation of federal probation for handgun charges." As will be explained later, the Statement of Charges contains materially false statements and omits material information that would defeat probable cause.

## STATEMENT OF CHARGES

UPON THE FACTS CONTAINED IN THE APPLICATION OF Officer: FORISH, DET. IT IS FORMALLY CHARGED
THAT JONES, RONALD DAVID III at the dates, times and locations specified below:

| NUM | CHG/CIT | STATUTE | PENALTY | DESCRIPTION OF THE CHARGE |
|---|---|---|---|---|
| 001 | 1 4803 | CR 9 501 | 6 M &/or $500.00 | FALSE STATEMENT TO OFFICER<br>On or About 06/29/2024<br>5401 OLD COURT RD.<br>BALTIMORE COUNTY, MD 21133<br>did make a false statement and report to DET. FORISH AND OFF. PURDIE, a peace officer, knowing the same to be false, with the  intent to deceive and with the intent to cause an investigation or other action to be taken.<br>Against the Peace, Government, and Dignity of the State. |
| 002 | 1 1364 | CR 8 301 ((c)(1)) | 1 Y &/or $500.00 | FRAUD-PER. IDENT. AVOID PROS<br>On or About 06/29/2024<br>5401 OLD COURT RD.<br>BALTIMORE COUNTY, MD 21133<br>... did knowingly and willfully assume the identity of TRYQUAN JOSHUA THOMAS JONES, to avoid identification, apprehension or prosecution for a crime, to wit: VIOLATION OF FEDERAL PROBATION FOR HANDGUN CHARGES.<br>Against the Peace, Government, and Dignity of the State. |

Det. Forish also applied for and received an arrest warrant, rather than requesting a summons in connection with the non-violent misdemeanor charges on which Mr. Jones had been previously arrested and released nearly one month earlier.

On July 24, 2024, Det. Forish and Det. Smith exchanged text messages expressing their frustration that law enforcement had been informed that the Baltimore County arrest warrant and a purported Instagram photograph were not "enough to violate federal probation."

### C.     July 29, 2024 – Baltimore City Police Officers Execute Unlawful Baltimore County Arrest Warrant

Apparently frustrated that Mr. Jones had not been arrested in connection with the Baltimore County charges, Det. Smith and other BPD officers set out to execute the arrest warrant. On July 29, 2024 at 7:15 p.m., BPD officers allegedly observed an Instagram story posted to Mr. Jones' Instagram account. The officers claim that in the story, Mr. Jones was seen with the strap of a cross-body bag across his shoulder. The officers further claim that they recognized the porch on which Mr. Jones was seated as the porch of the residence at 3114 Baker Street in Baltimore

City. At approximately 7:32 p.m., Det. Smith and other BPD officers arrived at 3114 Baker Street and saw Mr. Jones standing (in a white t-shirt) on the porch near the front door of the residence.



All officers immediately got out of the police car and ran to arrest Mr. Jones. The officers called out for Mr. Jones to put his hands up. Mr. Jones complied.



The officers then placed Mr. Jones' hands behind his back and handcuffed him. Two other men were present on the porch. An officer informed Mr. Jones that Mr. Jones had a warrant. Mr. Jones responded in surprise: "I got a warrant?!" As Mr. Jones was handcuffed, an officer moved past Mr. Jones and the officers who had arrested him to the bench on the opposite side of the porch and took hold of a tan cross-body-style bag, which was located on a bench.

8





At 7:33:09 p.m., the officer open the bag, looked inside, and stated that he had found a gun. At 7:33:28 p.m., an officer seized car keys from Mr. Jones' person. At 7:33:46 p.m., officers searched Mr. Jones' waistband area and found a gun. An officer also seized a cell phone from Mr. Jones. At 7:37 p.m., officers searched a backpack that was located on the porch near the man who was seated on the bench depicted above. The screenshot below depicts the location of the backpack at the time officers descended upon the porch. As is clear from the screenshot, the backpack was *not* near Mr. Jones, the person depicted in the foreground of the screenshot wearing the white shirt and being grabbed by the wrist.



Inside of the backpack, officers found suspected marijuana. At 8:01 p.m., without having obtained a search warrant and in the absence of any K-9 alert or probable cause, officers began searching the vehicle to which Mr. Jones had the keys. The vehicle was lawfully parked on the street. Officers claim to have found drug packaging materials in the trunk of the car but did not seize those items. Mr. Jones was transported to a police station.

### D.    Procedural History

On July 31, 2024, Mr. Jones was charged in the District Court of Maryland for Baltimore City with offenses related to the July 29 arrest. *See State v. Jones*, No. D-01-CR-24-015236. On August 23, 2024, those charges were forwarded to the Circuit Court for Baltimore City where Mr. Jones was charged by indictment. *See State v. Jones*, No. C-24-CR-24-001575. On September 17, 2024, the Baltimore County charges were placed on the stet docket. Meanwhile, on October 9, 2024, the Government filed an Indictment charging Mr. Jones in this Court with the following offenses: possession of a firearm and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g) (Count One); and possession of a stolen firearm, in violation of 18 U.S.C. § 922(j). (ECF No. 1.) On or about November 4, 2024, the Baltimore City charges were dismissed in favor of federal prosecution. On November 7, 2024, Mr. Jones made his initial appearance in this Court. A motions hearing is scheduled for January 27, 2026.

## II.    Legal Standard

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Warrantless searches are presumptively unreasonable "except in certain carefully defined classes of cases." *Cady v. Dombrowski*, 413 U.S. 433, 439 (1973) (internal quotation marks omitted). "A warrantless search by the police is invalid unless it falls within one of the narrow and well-delineated exceptions" to the Fourth Amendment's warrant requirement. *Flippo v. West Virginia*, 528 U.S. 11, 13 (per curiam); *see also Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971) (explaining that "the most basic constitutional rule in this area is that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions") (internal citations omitted). The Government bears the burden of proof in justifying a warrantless search or seizure. *Welsh v. Wisconsin*, 466 U.S. 740, 749-50 (1984); *United States v. Watson*, 703 F.3d 684, 689 (4th Cir. 2013).

The Fourth Amendment further commands that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id*. The Supreme Court has distilled three requirements for a warrant to issue under the Fourth Amendment:

> First, warrants must be issued by neutral, disinterested magistrates. Second, those seeking the warrant must demonstrate to the magistrate their probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense. Finally, warrants must particularly describe the things to be seized, as well as the place to be searched.

*Dalia v. United States*, 441 U.S. 238, 255 (1979) (internal citations omitted). Probable cause for a search exists when, "given all the circumstances set forth in the affidavit . . ., there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v.*

*Gates*, 462 U.S. 213, 238-39 (1983). Where an affidavit in support of a search warrant contains illegally obtained information, a reviewing court excises the tainted information and assesses whether "the affidavit's other averments set forth probable cause." *United States v. Gillenwaters*, 890 F.2d 679, 681 (4th Cir. 1989).

### III.    The Baltimore County Arrest Warrant

The Court should suppress the fruits of the July 29, 2024 BPD arrest of Mr. Jones because the Baltimore County arrest warrant, which formed the sole basis for the arrest, was issued in violation of Mr. Jones' due process rights and the execution of the arrest warrant violated Mr. Jones' Fourth Amendment rights. As an initial matter, the Baltimore Police Department did not have jurisdiction to execute the Baltimore County arrest warrant. There is no indication that BCPD requested that BPD assist in executing the arrest warrant on July 29. No BCPD officer was present at the scene of the arrest. Indeed, on July 23, 2024, Det. Forish sent a text message to BPD Det. Smith asking wither Det. Smith wanted Det. Forish to try to make sure Det. Smith would be notified if Mr. Jones was "picked up in the county[.]" Det. Forish further stated that there was a "pink slip" on the warrant to ensure that Det. Smith was notified "if/when [Mr. Jones] gets picked up in county." The next text message between the two was sent on the evening of July 30, 2024, one day *after* BPD executed the out of jurisdiction arrest warrant.

Second, the application for and execution of the Baltimore County arrest warrant violated Mr. Jones' due process and Fourth Amendment rights as a result of egregious police misconduct. At the hospital on June 29, BCPD officers promised Mr. Jones that if he spoke with them he would not be arrested and charged in connection with allegation of providing false information to law enforcement. At BCPD headquarters following the interview of Mr. Jones, a BCPD officer reiterated the same promise. Notwithstanding those promises, on July 23, 2024, Det. Forish, a

BCPD member, applied for charges and an arrest warrant in connection with the alleged false statements. While it is true that the police ordinarily cannot bind a prosecutor's office with respect to a promise not to arrest or bring charges, here, *BCPD itself* sought the charges. Had the Office of the State's Attorney for Baltimore County filed a criminal information based on the alleged false statements, the analysis would be different. In this case, however, BCPD certainly has the authority to bind itself. Officers promised Mr. Jones that if he went with them from the hospital and provided a statement at BCPD headquarters, he would not be arrested and charged. In applying for the subject charges, BCPD violated this promise and Mr. Jones' due process rights. The charging document was therefore void *ab initio* and evidence recovered from the execution of the arrest warrant issued in connection with those unlawful charges should be suppressed under both the Fourth and Fifth Amendments.

Additionally, the Baltimore County charging document is itself deficient such that evidence obtained during the execution of the arrest warrant is subject to suppression. *E.g.*, *Miller v. Prince George's Cty.*, 475 F.3d 621, 627 (4th Cir. 2007) ("Plaintiff acknowledges that he was arrested pursuant to a warrant, but claims that the warrant was not supported by probable cause. A plaintiff's allegations that police seized him pursuant to legal process that was not supported by probable cause and that the criminal proceedings terminated in his favor are sufficient to state a … claim alleging a seizure that was violative of the Fourth Amendment.").[2] The charging document alleges a violation of Md. Code Ann., Crim. Law § 8-301(c)(1), which criminalizes knowingly and willfully assuming the identity of another to avoid identification, apprehension, or prosecution for

---

[2] In this case, the Fourth Circuit analyzed alleged false statements in an application for a statement of charges under the standard of *Franks v. Delaware*, 438 U.S. 154 (1978). That standard, more fully articulated below, applies as to the false statements and omissions at issue in the Baltimore County Statement of Charges.

a crime. The predicate crime alleged is a "violation of federal probation." A violation of the terms of federal supervised release is *not* a criminal offense. *See, e.g.*, *United States v. Riley*, 920 F.3d 200, 208 (4th Cir. 2019) ("supervised release revocation proceedings are not criminal proceedings, and a determination that a person violated the terms of supervised release does not amount to a conviction for a criminal offense").[3] Accordingly, on its face, the charging document failed to state a violation of § 8-301(c)(1). Moreover, Det. Forish, who was clearly aware of Mr. Jones' status as a person on federal supervised release, intentionally misled the District Court commissioner into issuing a charge that is invalid as a matter of law.

As for the allegation of a violation of § 9-501, the statute states as follows: "A person may not make, or cause to be made, a statement, report, or complaint that the person knows to be false as a whole or in material part, to a law enforcement officer of the State, of a county, municipal corporation, or other political subdivision of the State, or of the Maryland-National Capital Park and Planning Police with intent to deceive and to cause an investigation or other action to be taken as a result of the statement, report, or complaint." The charging document alleges that Mr. Jones made a false statement and report at 5401 Old Court Road, the address of Northwest Hospital. The Statement of Charges does not establish probable cause for this offense. As a matter of Maryland law, it is well established that "the offense of making a false statement to a police officer is not committed by one who, during an ongoing investigation, answers an investigating police officer's inquiries untruthfully. The offense is only committed by one whose false statement causes the

---

[3] Nor are violation of probation proceedings in Maryland state courts considered criminal matters. *Gibson v. State*, 328 Md. 687, 690 (1992) ("It is firmly established that a revocation of probation hearing is a civil proceeding, in which the probationer is not cloaked with the full panoply of constitutional rights and procedural safeguards  enjoyed by a defendant in a criminal cause.").

police initially to undertake an investigation or other action." *Jones v. State*, 362 Md. 331, 336 (2001).

As an initial matter, statements to hospital officials cannot form the basis of a charge under this statute because such officials are not law enforcement officers. Second, at the time the alleged false statement (*i.e.,* the name) was made, law enforcement had been investigating the shooting for *hours*. It is not the case that Mr. Jones called the police to report a crime that never occurred. Mr. Jones was shot and then responded to a hospital for treatment. He provided information to hospital officials, who in turn provided that information to the police. The police then began their investigation. Mr. Jones' answers in response to police questioning that related to an ongoing investigation cannot support the alleged offense. Again, in swearing to a commissioner that there was probable cause to believe Mr. Jones had committed a violation of § 9-501, Det. Forish provided false and misleading information. Det. Fornish knew that law enforcement had been investigating the shooting well before Mr. Jones made any statement to him and Officer Purdie. Det. Forish knew that Mr. Jones' statements came only in response to police questioning for a crime already under investigation. Det. Forish also knew that officers had already promised *not* to charge or arrest Mr. Jones. And Det. Forish knew that Mr. Jones, while still at the hospital, provided truthful information about his name.[4] As a result of egregious police misconduct in the form of the material falsehoods and omissions in the Statement of Charges, the Baltimore County

---

[4] Additionally, notwithstanding the fact that BCPD had *already* arrested Mr. Jones in connection with these nonviolent misdemeanor offenses on June 29 and made the decision *not to pursue charges*, Det. Forish sought an arrest warrant, not a summons. Det. Fornish was well aware that Mr. Jones was on federal supervised release. Officers apparently regularly monitored his social media. Mr. Jones was not difficult to find. There was no basis to apply for an arrest warrant. It is therefore likely that Det. Forish made additional false statements in an effort to obtain the arrest warrant.

charges were issued in violation of Mr. Jones' due process rights and the execution of the arrest warrant on July 29, 2024 violated Mr. Jones' Fourth Amendment rights.

**IV.    The July 29, 2024 Baltimore City Arrest**

The Court should also suppress the fruits of the July 29, 2024 arrest by members of BPD. First, BPD did not have the authority to execute the Baltimore County arrest warrant, which, as explained above, was invalid. The arrest was therefore unlawful and conducted in violation of Mr. Jones' Fourth Amendment rights. Second, the search of the tan cross-body bag also violated Mr. Jones' Fourth Amendment rights. The officers did not obtain a warrant to search the bag. "Warrantless searches are presumptively unreasonable except in certain carefully defined classes of cases." *United States v. Patiutka*, 804 F.3d 684, 688 (4th Cir. 2015) (internal quotation and citation omitted). "The government bears the burden of proof in justifying a warrantless search or seizure." *United States v. Davis*, 997 F.3d 191, 195 (4th Cir. 2021) (quotation and citation omitted). Accordingly, Mr. Jones has no burden to anticipate the Government's attempts to justify the presumptively unreasonable conduct of law enforcement. Nonetheless, no exception to the warrant requirement excuses the search of the tan bag. The search of the bag does not fall within the exception for a search incident to a lawful arrest. The Fourth Circuit has held that "police officers can conduct warrantless searches of non-vehicular containers incident to a lawful arrest 'only when the arrestee is unsecured and within reaching distance of the [container] at the time of the search.'" *Davis*, 997 F.3d at 197 (citing *Arizona v. Gant*, 556 U.S. 332, 343 (2009)). Here, at the time of the seizure and search of the bag, Mr. Jones was already under arrest. The screenshot below depicts the vantage point of the officer who searched the bag before as he ascended the stairs onto the porch. The bag is clearly located on a bench on the far side of the porch and is not within reaching distance of Mr. Jones, who was already secured by other officers.

16



Accordingly, there was no lawful basis to search the tan bag.[5]

## V.    The Court Should Suppress the Fruits of the Federal Search Warrants

On September 11, 2024, FBI Special Agent Andrew Vogel applied for and received federal warrants to search: (1) the Instagram account with the username "bstreet_bo;" (2) an iPhone seized from Mr. Jones during the July 29, 2024 arrest; and (3) an iCloud account associated with Mr. Jones. The same affidavit supported each search warrant application. *See* Ex. B. Agent Vogel sought the search warrants to obtain evidence of possession with intent to distribute controlled substances and possession of a firearm by a prohibited person.

### A.  Fruit of the Poisonous Tree

The Court should suppress evidence obtained through the execution of the search warrants as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963); *United States v. Oscar-Torres*, 507 F.3d 224, 227 (4th Cir. 2007). The inclusion of illegally obtained

---

[5] In light of the fact that the Government has not charged Mr. Jones with offenses related to the marijuana found in the backpack on the far side of the porch or with offenses related to the search of the Acura, Mr. Jones has not raised separate suppression arguments as to those searches. However, as explained below, the representations of law enforcement with respect to those searches bear on the validity of subsequently issued search warrants.

information in a search warrant application invalidates a warrant when that information is "critical to establishing probable cause for the issuance of the warrant." *United States v. Karo*, 468 U.S. 705, 719 (1984). The affidavit in support of the search warrants relied upon (1) the unconstitutional Baltimore County arrest warrant, (2) the unconstitutional July 29, 2024 arrest of Mr. Jones, (3) the unconstitutional warrantless search of the tan bag; and (4) the unlawful warrantless search of the Acura. All of this information was critical to any finding of probable cause.

### B.    Mr. Jones is Entitled to a Hearing Pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978)

With respect to the federal search warrants, Mr. Jones requests a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). In *Franks*, the Supreme Court "held that in certain narrowly defined circumstances a defendant can attack a facially sufficient affidavit." *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990)." "To obtain a *Franks* hearing, a defendant must make a substantial preliminary showing that the affiant made (1) a false statement (2) knowingly and intentionally, or with reckless disregard for the truth that was (3) necessary to the finding of probable cause." *United States v. White*, 850 F.3d 667, 673 (4th Cir. 2017) (internal quotation and citation omitted). "Along with affirmative false statements, *Franks* protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate." *United States v. Haas*, 986 F.3d 467, 474 (4th Cir. 2021) (internal quotation and citation omitted). To obtain a *Franks* hearing on the basis of a material omission in a search warrant application, Mr. Jones must make a substantial preliminary showing that: "(1) law enforcement made an omission; (2) law enforcement made the omission knowingly and intentionally, or with reckless disregard for the truth, and (3) the inclusion of the omitted evidence in the affidavit would have defeated its probable cause." *Id.* (citation omitted).

"If a *Franks* hearing is appropriate and an affiant's material perjury or recklessness is established by a preponderance of the evidence, the warrant must be voided and evidence or testimony gathered pursuant to it must be excluded. A warrant that violates *Franks* is not subject to the good-faith exception to the exclusionary rule[.]"*Colkley*, 899 F.2d at 300 (internal citations omitted).

The affidavit contains a number of material falsehoods and omissions. First, Agent Vogel failed to inform Judge Aslan that BCPD promised not to arrest or charge Mr. Jones with offenses related to his statements at the hospital on June 29, 2024 if he provided a statement at BCPD headquarters, which he did. Agent Vogel also failed to inform Judge Aslan that the Baltimore County arrest warrant was issued on the basis of a Statement of Charges that contained materially false information. For example, a federal law enforcement officer would surely be aware that a violation of supervised release does not constitute an independent criminal offense. Agent Vogel applied for the warrants on September 11, 2024. The agent had ample time to obtain the Baltimore County case file and review its contents. Indeed, at the time of the warrant application, the Baltimore County charges had not yet been placed on the stet docket. Had Judge Aslan been aware that the warrant BPD executed on July 29 was tainted by unconstitutional conduct, the search warrants would not have issued as there is no other basis set forth in the affidavit for BPD's arrest of Mr. Jones.

Second, the affidavit states that officers recognized the location – *to the house number* – from which Mr. Jones posted an Instagram story on the basis of the story itself. As best counsel can discern, the following is a screenshot of the Instagram story, which consists of a still photograph set to music.



The story does not appear to contain a location tag. No street signs or house numbers are visible. It does not appear to be possible to discern the specific address on the basis of the story. This allegation is not credible.

Third, the affidavit states that "BPD saw a satchel with the same 'Dailleu' lettering depicted in the Instagram story within the grab area of JONES." This is a patently false statement. As reflected in the body-worn camera footage, Mr. Jones *was not* within arm's reach of the tan bag, which was located on the opposite side of the porch. The materiality of this false statement is that it was an attempt to mislead Judge Aslan into concluding that the bag was lawfully searched incident to Mr. Jones' arrest.

Fourth, the affidavit states that "BPD also found a bookbag on the porch in the immediate area of JONES." Again, this statement is demonstrably false. As seen below, when officers arrived at the arrest site, the backpack was located at the feet of the man seated on the bench wearing long blue pants. The backpack was *not* in the immediate area of Mr. Jones. The materiality of this false

statement is manifest. The agent sought to connect Mr. Jones to distribution quantities of marijuana by claiming that he was in immediate proximity to the backpack.



Fifth, the affidavit states that "BPD also recovered the SUBJECT ELECTRONIC DEVICE and Acura car keys from JONES. Officers found the Acura in the vicinity of the arrest and searched the car. They observed a large quantity of packaging material in the trunk of the vehicle but did not seize it." The agent failed to inform Judge Aslan that the officers did not have a warrant to search the vehicle. The agent did not tell Judge Aslan that officers elected to search the vehicle only after it became clear that no K-9 unit would be responding to the scene. The agent did not tell Judge Aslan that in an official report, Det. Smith stated that he conducted the search on the basis of purported "reasonable articulate [sic] suspicion that there could be more evidence of the distribution of Cannabis inside the vehicle," a standard far lower than the probable cause standard applicable to warrantless searches of vehicles. Once again, these omissions are material because they create the false impression that officers searched the vehicle in a lawful manner.

These false statements and omissions were made, at bare a minimum, with a *mens rea* of recklessness. At the time he swore out the affidavit, Agent Vogel had been employed by the FBI for at least 6 years. He had been part of the Safe Streets Task Force for one year. He was

21

undoubtedly aware that BPD and BCPD officers are equipped with body-worn cameras and routinely create reports. Had the agent performed a minimal amount of due diligence, he would have recognized the falsity and misleading nature of this affidavit. Mr. Jones has more than established that he is entitled to a *Franks* hearing on the federal search warrants.

### C.    The Warrants Are Facially Invalid

The warrants are also facially invalid. The affidavit in support of the warrants fails to establish a sufficient nexus between the specific places to be searched and the particular offenses under investigation. Additionally, the warrant authorized a large-scale rummaging through Mr. Jones' most sensitive data without any showing that evidence of a crime was likely to be found in each digital area to be searched. "Probable cause to believe that a person is engaged in criminal activity is not *carte blanche* to search all their personal effects. There must also be some nexus between the suspected crime and the place to be searched—a substantial likelihood that evidence of a crime will be found *in a particular place.*" *United States v. Orozco*, 41 F.4th 403, 409 (4th Cir. 2022) (emphasis in original) (internal citation omitted). Mere speculation, however, is insufficient to demonstrate a nexus between a crime under investigation and a location to be searched. *See, e.g.*, *United States v. Shanklin*, No. 2:12CR162, 2013 WL 6019216, at *8-9 (E.D. Va. Nov. 13, 2013) (rejecting as invalid a search warrant in which the affiant cited "a possibility that the computers contain evidence of the exploitation of children, a speculation that is insufficient to establish probable cause" and declining to apply the good faith exception where "[t]he detective attempted to establish probable cause using conclusory and speculative assertions"); *United States v. White*, 660 F.2d 1178, 1184 (7th Cir. 1981) ("A lawful seizure must be based upon a 'nexus' between the item seized and particular criminal behavior. The 'nexus' must be one *known to the officers* at the time of the seizure and *may not be based upon mere speculation.*") (citations

omitted) (emphasis added). Additionally, the "particularity requirement protects against a general, exploratory rummaging in a person's belongings, to the extent that a valid warrant leaves nothing to the discretion of the officers performing the search." *United States v. Kimble*, 855 F.3d 604, 610 (4th Cir. 2017) (internal quotation and citation omitted).

The affidavit establishes no basis to believe that Mr. Jones' cell phone would contain evidence of firearms activity and drug distribution. The affidavit contains no specific information about Mr. Jones' use of the phone. It does not cite any text messages or calls between that phone and any other person engaged in firearms or drug crimes. Instead, on the basis of generalized speculation, the warrant authorized the search of nearly *all files* on the phone. As to the iCloud account, the affidavit contains no information that the specific account was used for firearms or drug activity. Indeed, it contains no specific allegations about the account at all. With respect to the Instagram account, the affidavit cites a single story but contains no allegation that the story depicted firearms or drugs. The threadbare allegations in the affidavit are insufficient to establish any nexus between the places to be searched and the offenses under investigation. Yet the warrants authorized the search of a wide array of highly personal data without providing any basis to believe evidence of the subject offenses would be found in each file type. Moreover, the warrants are overly broad in terms of temporal scope. As to the Instagram and iCloud accounts, the warrants authorized the seizure of information dating back to February 2024 and extending through September 11, 2024. The affidavit in  support of the warrant provides no explanation as to why such a large timeframe was necessary. There is no allegation of any criminal conduct in February, March, April, or May 2024. Mr. Jones has been incarcerated since July 29, 2024. And it does not appear that there is any temporal limitation on the data to be seized from the cell phone.

**D.      The Extended Warrantless Seizure of Mr. Jones' Cell Phone Violated the Fourth Amendment**

BPD officers seized Mr. Jones' phone without a warrant authorizing them to do so on July 29, 2024. No law enforcement officer applied for a warrant to search the contents of the phone until September 11, 2024. In other words, law enforcement held on to Mr. Jones' phone, without a warrant, for 44 days before finally applying for one. A delay of this magnitude requires suppression. The seizure of electronic devices, even if initially proper (and in this case, the initial seizure was not proper), becomes unconstitutional if law enforcement acts with unreasonable delay in securing a warrant. *See* U.S. Const. amend. IV ("right of the people to be secure ... against unreasonable searches ... shall not be violated"); *United States v. Pratt*, 915 F.3d 266, 271 (4th Cir. 2019) (observing that "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable searches.'") (quotations and citation removed). In fact, "even a seizure based on probable cause is unconstitutional if the police act with unreasonable delay in securing a warrant." *United States v. Mitchell*, 565 F.3d 1347, 1350 (11th Cir. 2009) (quotations and citation removed); *see also United States v. Respress*, 9 F.3d 483, 488 (6th Cir. 1993) ("even with the existence of probable cause to effect a seizure, the duration of the seizure pending the issuance of a search warrant must still be reasonable.").

To determine if an extended seizure violates the Fourth Amendment, the Court must balance the government's interest in the seizure against the individual's possessory interest in the object seized. *Pratt*, 915 F.3d at 271. There is "no bright line past which a delay becomes unreasonable." *United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012). It has been determined that "fifteen days is a considerable period" of delay "which weighs in [the defendant's] favor." *United States v. Mays*, 993 F.3d 607, 617 (11th Cir. 2021). Courts have recognized that

"'[i]n some circumstances...we would normally expect police officers to secure a search warrant in considerably less time than' eleven days." *United States v. Smith*, 967 F.3d 198, 206 (2d Cir. 2020) (internal citation omitted). In *Pratt*, the Fourth Circuit held that a 31-day delay in obtaining a warrant to search the contents of a cell phone after law enforcement had seized the phone without a warrant was unreasonable and that the district court erred in denying the defendant's motion to suppress. *Pratt*, 915 F.3d at 273.

It is well established that individuals maintain a strong possessory interest in their smartphones. *See, e.g.*, *United States v. Wilkins*, 538 F. Supp. 3d 49, 91 (D.D.C. 2021). Here, Mr. Jones did not consent to the seizure or search of his phone. By contrast, the Government's interest in holding the phone for 44 days without having obtained a warrant is negligble. Mr. Jones was arrested in connection with misdemeanor charges that BCPD declined to pursue for nearly one month. As to the July 29 allegations, the offenses at issue do not require digital evidence. Instead, it is clear that the Government intends to attempt to prove those charges through physical evidence recovered at the time of Mr. Jones' arrest. In failing to seek a search warrant, Baltimore City authorities demonstrated that the phone was not central to the case against Mr. Jones. It appears that the FBI received Mr. Jones' cell phone on August 16, 2024. Tellingly, federal law enforcement waited nearly one month before seeking a search warrant for the phone. As a result of the extended warrantless seizure of Mr. Jones' cell phone, the Court should suppress the fruits of the search of the device.

## CONCLUSION

This case presents a host of constitutional violations. First, BCPD violated its promise not to charge or arrest Mr. Jones in connection with his statements at the hospital on June 29, 2024, statements he made as he was suffering from a gunshot wound to the back. Second, BCPD applied for those charges on the basis of a sworn statement rife with falsities and omissions. Third, BPD did not have jurisdiction to execute the invalid Baltimore County arrest warrant. Fourth, BPD officers violated Mr. Jones' Fourth Amendment rights in executing the arrest warrant and searching, without having obtained a search warrant, a bag that was not within reaching distance of Mr. Jones. Fifth, a federal agent submitted an overly broad and nexus-devoid affidavit in support of a warrant to search Mr. Jones' private digital information. And in doing so, the agent made materially false statements and omitted information that was crucial to a determination of probable cause. Finally, law enforcement engaged in an extended warrantless seizure of Mr. Jones' cell phone. For the reasons set forth above and those to be presented at the motions hearing, the Court should grant the Motion to Suppress.

Respectfully submitted,

_____/s/_____
Michael E. Lawlor
Adam C. Demetriou
Brennan, McKenna & Lawlor, Chtd.
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
(301) 474-0044
mlawlor@brennanmckenna.com

26

## CERTIFICATE OF SERVICE[6]

I HEREBY CERTIFY that on this 2nd day of December, 2025, the foregoing was served on all parties via ECF.


_____/s/_____
Michael E. Lawlor

---

[6] This Motion was due to be filed on or before December 1, 2025. Over the Thanksgiving holiday, counsel faced an unexpected and time-sensitive filing deadline in another matter. The Government has indicated that it does not oppose Mr. Jones' request to extend the deadline for filing this Motion though December 2, 2025. Additionally, the Court has graciously indicated that it is inclined to accept the filing. Mr. Jones respectfully requests that the Court accept the Motion for filing.